UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHARLES GOULD, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No.: 2:22-cv-00183-JHE |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION**[1]

Plaintiff Charles Gould ("Gould") seeks review, pursuant to 42 U.S.C. § 405 (g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his applications for supplemental security income ("SSI"), a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Gould timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** for further proceedings.

### I. Factual and Procedural History

On May 31, 2019, Gould protectively filed applications for a period of disability and DIB and SSI alleging disability beginning on April 4, 2016, later amended to August 9, 2018. (Tr. 10).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

The Commissioner initially denied Gould's claims on September 3, 2019. (*Id*.) Gould timely requested a hearing before an Administrative Law Judge ("ALJ"). Following a hearing on June 9, 2020, the ALJ entered an unfavorable decision denying Gould's application for benefits in a decision dated March 24, 2021. (Tr. 7). Gould sought review by the Appeals Council, but it denied his request for review on December 13, 2021. (Tr. 1). On that date, the ALJ's decision became the final decision of the Commissioner. On February 11, 2022, Gould initiated this action. (Doc. 1).

Gould was fifty-one years old on his alleged onset date. (Tr. 23). Gould has past relevant work as a sales representative, construction laborer, and mail carrier. (Tr. 23).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. It is "more than a scintilla, but less than a preponderance." *Id*.

---

[2] In general, the legal standards applied are the same whether a claimant seeks SSI or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity be reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505 (a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 (a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir.1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel,* 189 F.3d 561, 562–63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the Commissioner to show that the claimant can perform some other job." *Pope,* 998 F.2d at 477; *accord Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Gould had not engaged in substantial gainful activity since his amended alleged onset date, August 9, 2018. (Tr. 12). At Step Two, the ALJ determined Gould had the following severe impairments: posttraumatic stress disorder ("PTSD"); depressive disorder; anxiety disorder; degenerative disc disease; osteoarthritis; and peripheral neuropathy. (Tr. 13). At Step Three, the ALJ found Gould does not have an impairment or combination of impairments that meets or medical equals the severity of one of the listed impairments in 20 CFR. Part 404, Subpart P, Appendix 1. (Tr. 65–66).

Before proceeding to Step Four, the ALJ determined Gould's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Gould has the RFC

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) but with the following non-exertional limitations: unable to climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl; he should avoid concentrated exposure to temperature changes; he can never work with dangerous moving machinery; he can never work at unprotected heights; the claimant can understand, remember, and carry out simple instructions; he can maintain attention with the general public; he can adapt to routine and infrequent workplace changes; the claimant can make simple work related decisions; and he can perform jobs that do not require working in tandem with coworkers.

(Tr. 20).

At Step Four, relying in part on testimony from a vocational expert ("VE"), the ALJ determined Gould was unable to perform his past relevant work as a mail carrier, as a salesman, and as a construction worker as actually or generally performed. (Tr. 23). At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Gould can perform considering his age, education, work experience, and RFC. (Tr. 23–24). Therefore, the ALJ determined Gould has not been under a disability from August 9, 2018, and denied his claim.

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Williams*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court,

however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Gould challenges the Commissioner's denial of benefits on two somewhat overlapping grounds. First, Gould contends the ALJ erroneously rejected Gould's pain testimony. (Doc. 16 at 7–10). Second, Gould contends the ALJ failed to make a function-by-function assessment of his physical capacity and mental functions. (Doc. 16 at 11–15). Because the first of these requires reversal and the ALJ will be required to reassess Gould's RFC, the undersigned does not address the second argument.

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires:

> (1) Evidence of an underlying medical condition and either
>
> (2) Objective medical evidence that confirms the severity of the alleged pain arising from that condition or
>
> (3) That the objectively determined medical condition is of such a severity that it can be reasonably be expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p, 1996 WL 364186 at *4–5. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96–7p, 1996 WL 364186 at * 4–8. If an ALJ discredits a claimant's subjective complaints, "he must

6

articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). In articulating reasons for discrediting subjective testimony, an ALJ need not refer to every piece of evidence in the record as long as the decision is not a broad rejection which leaves a district or appellate court unable to conclude that the medical condition was considered as a whole. *Petteway v. Comm'r of Soc. Sec.*, 353 Fed. App'x. 287, 288 (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 2011), based on the prior precedent rule, and remanding to the agency).

At the hearing, Gould testified that he is unable to work full time due to severe arthritis in shoulders; edema in his legs and feet after walking or standing for ten minutes; neuropathy in his feet, arms, and hands; and PTSD. (Tr. 39, 47–48). Gould reported 8/10 pain in his shoulders without medication and 6/10 pain in his shoulders with medication and that he is unable to hold his arms over head for an extended period of time. (Tr. 43). Gould stated that he experienced PTSD related nightmares two to three times out of the week and is triggered by large crowds. (Tr. 43–44). Gould also reported that he can care for his personal needs and microwaves his food but is unable to complete inside and outside chores. (Tr. 45–46). In addition, Gould testified that he sleeps for about three hours before waking from nightmares or pain and that his medications cause frequent restroom usage. (Tr. 51–52). Because of his pain and fatigue, Gould reported only being able to concentrate for five to ten minutes. (Tr. 52).

In her decision, the ALJ concluded Gould's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms; however, she discredited Gould's subjective testimony regarding the intensity, persistence and limiting effects of his pain and other symptoms for not being entirely consistent with the medical evidence and other evidence in the record. (Tr. 20). Specifically, the ALJ stated:

> While imaging showed the claimant to have degenerative disc disease, he was noted to have no significant restriction of motion in his spine during the most recent consultative examination. (Exhibits B1F, B4F, and B7F). He also alleged ongoing pain and limitations as discussed above and has been diagnosed with osteoarthritis and peripheral neuropathy. (Exhibits B1F, B4F, and B5F). However, testing showed the claimant to have only mild left tibial neuropathy across the ankle. (Exhibit B7F). While there were some reduced strength findings by [CRNP Cassandra] Frieson, he was noted to have 5/5 strength in all of the extremities during the most recent consultative examination. (Exhibits B4F, B5F, and B7F). He was also noted to have a normal range of motion in the bilateral knee and ankle. (Exhibit B5F). The claimant alleged problems reaching and was noted to have reduced abduction in the bilateral shoulder by Nurse Frieson but also noted to have normal forward elevation, internal rotation, and external rotation in the bilateral shoulder. (Exhibits [sic] B5F). As noted previously, he was described as having normal strength in the more recent consultative examination and the undersigned also notes that the claimant has not complained of persistent or ongoing problems reaching to treatment providers. (Exhibits B3F, B6F, and B7F). The claimant alleged problems walking but there are normal/appropriate gait findings in the treatment records. (Exhibit B7F). During the more recent treatment records, the claimant had no gait instability and was able to heel-toe walk[]. (Exhibit B7F). The claimant alleged that he needs a cane for ambulation but there is no indication that a cane has been prescribed and Dr. [Hector] Caballero stated that the claimant's cane is not medically necessary. The claimant alleged side effects resulting from his medication but denied side effects during treatment visits. (Exhibits B1F and B6F). There is no indication that the claimant has complained of persistent or ongoing side effects to treatment providers. In addition, despite his alleged physical symptoms, the claimant was described as functioning independently. (Exhibit B1F). The record does not support the level of limitation alleged by the claimant or a finding that his physical impairments cause him disabling limitations.

(Tr. 20).

For the most part, Gould's argument is that record evidence supports diagnoses consistent with his conditions, not limitations. This is an argument about the first prong of the pain standard.

8

The ALJ found that Gould satisfied this prong (tr. 20), but "proof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work." *Hutchinson v. Astrue*, 408 F. App'x 324, 325 (11th Cir. 2011). The question is whether the ALJ adequately supported her conclusion that Gould's subjective claims are not entirely consistent with the record evidence.

Although Gould argues the ALJ failed to explain how the record medical evidence undercuts Gould's testimony (doc. 16 at 10), substantial evidence supports the ALJ's findings as to the majority of Gould's pain testimony. The evidence the ALJ cited is in fact in genuine conflict with Gould's testimony of disabling symptoms, and the ALJ's written decision is adequate to draw that conclusion. For example, Dr. Caballero's examination of Gould in December 2020 is consistent with the ALJ's characterization. Specifically, Dr. Caballero noted 5/5 strength in all extremities, no significant restriction in motion of the spine, and only mild left carpal tunnel syndrome and mild left tibial neuropathy across the heel. (Tr. 20, 576). The ALJ found this supported no reaching, handling, feeling, or pushing/pulling restrictions. (Tr. 20). The ALJ also found Gould was able to function independently and had normal gait findings, contradicting his complaints of swelling causing him difficulty being on his feet for prolonged periods of time. (Tr. 20). Gould points to other abnormal findings—for example, that CRNP Frieson found reduced strength[4] and Dr. Caballero imposed some restrictions on Gould's ability to operate foot controls

---

[4] Gould alludes to the fact that the ALJ found CRNP Frieson's opinion was predominately based on Gould's subjective reports rather than her objective findings. (Doc. 16 at 14) (citing tr. 21). Gould does not contend the ALJ inappropriately assessed CRNP Frieson's opinion as a general matter, only that CRNP Frieson's examination supports his subjective complaints. In any case, while CRNP Frieson's examination revealed some abnormalities in Gould's range of motion (*see* tr. 435-37), her conclusions regarding Gould's limitations in bathing and dressing himself, preparing meals, standing and walking, lifting objects, using his arms, hands, and fingers, seeing

and avoid ordinary workplace hazards[5] (doc. 16 at 13–14)—he does not provide any argument for why the ALJ was not entitled to resolve the conflicts between his testimony and the portions of the record the ALJ cited.

However, the ALJ's findings regarding Gould's medication side effects were not supported by substantial evidence. Gould testified that that "with the blood pressure and the diabetes medicine, I'm continued — I'm constantly using the restroom." (Tr. 52). According to Gould, this causes him to wake up frequently at night, preventing him from getting restful sleep and causing him to sleep during the day. (Tr. 52–52). The ALJ entirely rejected Gould's claims regarding side effects, stating that Gould "denied side effects during treatment visits" and that there "is no indication that the claimant has complained of persistent or ongoing side effects to treatment providers." (Tr. 20).

A review of the evidence cited by the ALJ shows it is not consistent with her description. The ALJ pointed to the entirety of Exhibits B1F and B6F for the proposition that Gould denied side effects. As to Exhibit B1F, the ALJ appears to be referencing two VA visits where the provider checked "yes" when asked if the patient denied experiencing side effects. (Tr. 321, 335). The first of these visits occurred on February 13, 2019. (Tr. 335). While the provider did check the box indicating Gould denied side effects, the provider also noted that Gould complained of

---

and hearing, concentrating and remembering, completing tasks, and getting along with people appear to be far more based on Gould's claimant questionnaire (tr. 435) than her objective findings on examination (tr. 437). The ALJ also found CRNP Frieson's abnormal findings were inconsistent with Dr. Caballero's later findings and was unpersuaded that these supported Gould's alleged limitations.

[5] The ALJ rejected Dr. Caballero's foot control restrictions because they were "not supported by his own strength and range of motion findings." (Tr. 20). Gould does not explicitly argue this finding was reversible error.

"sometimes frequent urination." (Tr. 335). Considered alone, this might lend support to the ALJ's finding. But on a subsequent visit on March 26, 2019, several lines below the checkbox, under the section marked "Diabetes," the provider stated "*reports frequent urination -**associates with medication more than hypoglycemia**." (Tr. 321) (emphasis added). This directly contradicts both that Gould denied side effects and that he did not complain of them, and it should have caused the ALJ to consider in more detail whether the frequent urination Gould reported at the February 13, 2019, visit was connected to his medication side effects notwithstanding the checked box.

The ALJ's characterization of Exhibit B6F is also inaccurate. During a May 7, 2020 televisit with the Birmingham VAMC, LCSW Lori Casterlin noted that Gould "thinks Metformin causes him to have to get up more frequently to use the restroom." (Tr. 454). The same note appears during a March 17, 2020 visit. (Tr. 468). At a December 16, 2019 visit, while noting that Gould denied side effects from his medication, the provider also noted that Gould experienced "*frequent urination, unsure if from thiazide or DM*." (Tr. 521). The only portion of Exhibit B6F in which the provider reports that Gould denied side effects, with no nearby notations providing context or caveats, was during a visit on October 15, 2019. (Tr. 561). Taken as a whole, Exhibit B6F does not support the ALJ's conclusion that Gould never complained of side effects.

A court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Mitchell*, 771 F.3d at 782. However, the ALJ's error has nothing to do with the weight she placed on the evidence. The ALJ was simply incorrect to state that Gould never complained of medication side effects when the records she cited are full of such complaints, and wrong to conclude (if that was her conclusion) that checkboxes indicating Gould denied side effects were representative of the record as a whole. These are not "explicit and adequate reasons"

to reject Gould's testimony, *see Wilson*, 284 F.3d at 1225, and thus these findings are not supported by substantial evidence. Remand is warranted.

Since the ALJ improperly rejected Gould's complaints of side effects, the ALJ necessarily did not incorporate limitations derived from those complaints into Gould's RFC. On remand, the ALJ should assess any limitations supported by Gould's testimony regarding medication side effects and formulate a new RFC taking those limitations into account.[6]

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Daniel's claim for supplemental security income, a period of disability, and disability insurance benefits is **REVERSED**, and this action is **REMANDED** for further proceedings consistent with this opinion.

DONE this 21st day of September, 2023.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[6] In his second argument, Gould contends the ALJ failed to directly address his alleged inability to stand for six hours out of an eight-hour workday. (Doc. 16 at 12). Gould states his testimony supporting this included "detailed descriptions of pain, swelling of his upper and lower extremities, [and] need for frequent and unscheduled restroom breaks and fatigue . . . ." (*Id.*). While Gould's second argument does not appear to provide an independent basis for reversal, the ALJ should assess the extent to which Gould's medication side effects cause him to need frequent restroom breaks and the extent to which that limitation, if any, impacts Gould's ability to stand during a workday.